# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------X

THE HEARST CORPORATION,

                              Plaintiff,

    -against-

ACE AMERICAN INSURANCE COMPANY,

                             Defendant.

------------------------------------------------------------------X

Index No. _____

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff The Hearst Corporation ("Hearst") for its Complaint for declaratory judgment, breach of contract, and damages against Defendant ACE American Insurance Company ("Chubb"), alleges as follows:

**NATURE OF THE ACTION AND RELIEF SOUGHT**

1.     This action arises out of Chubb's wrongful coverage denial of Hearst's losses under the cyber liability insurance policy (the "Policy") that Chubb sold to Hearst.

2.     Given the growing frequency of cybersecurity events and data breaches, impacting especially industries that store personal information, Hearst purchased a cyber liability insurance from Chubb, in order to protect itself and its businesses from the potential risks they face. In marketing the Policy, Chubb acknowledged that "[t]here's no way to eliminate cyber risks like data breaches . . . [but] [a] cyber liability insurance policy may assist in reducing exposure following a cyber incident."[1]

---

[1] https://www.chubb.com/au-en/articles/business/managing-data-breaches.html

3. MCG Health, LLC ("MCG"), a wholly owned subsidiary of Hearst covered by the Policy, provides patient care guidelines and software solutions to healthcare providers and health plans, to improve clinical outcomes and reduce care costs. In order to provide such services, MCG's customers may provide to MCG certain Personally Identifiable Information ("PII") and Protected Health Information ("PHI") of the patients and members the customers serve.

4. On March 25, 2022, MCG determined that an unauthorized party had obtained PII and PHI matching data on MCG's systems pertaining to approximately 1,100,000 persons (the "Data Security Incident").

5. In or around June 2022, thirteen class action lawsuits were filed against MCG regarding the Data Security Incident, alleging that it failed to adequately safeguard the individuals' PHI and PII that it collected and maintained. Hearst timely notified Chubb of the lawsuits and requested coverage under the Policy.

6. Nine of the complaints were filed in the United States District Court for the Western District of Washington, and each included a cause of action under the Washington State Consumer Protection Act ("WA CPA"), among numerous other claims.

7. In its May 4, 2022 and August 25, 2022 coverage letters, Chubb recognized that the Data Security Incident and resulting lawsuits triggered coverage under the Policy. Chubb agreed to defend MCG in its coverage letter regarding the lawsuits, noting that its determination of coverage for the lawsuits was "based on the information received to date" and specifically noting that the lawsuits included causes of action for violations of the WA CPA and other state consumer protection acts.

8. Chubb made no mention in its coverage letter of any purported coverage exclusions, or right to allocate damages or a settlement among various causes of actions alleged in the

2

complaints.

9. MCG subsequently successfully defended itself and significantly limited its exposure – MCG was dismissed from two of the lawsuits, and eleven were consolidated under a single civil action number in the Western District of Washington (the "Privacy Action").

10. In February 2023, Plaintiffs and MCG agreed to mediation of the Privacy Action.

11. Chubb was kept fully informed of the mediation process, and Chubb agreed to the choice of the mediator in February 2023, as well as the July 26, 2023 mediation date that was scheduled.

12. In April 2023, Hearst asked Chubb for settlement authority within Policy limits in preparation for the July 26, 2023 mediation.

13. Despite Hearst pressing for a response for months, Chubb waited until July 19, 2023 – less than five business days before the mediation – to finally respond. Chubb did not approve Hearst's request for authorization for a settlement within Policy limits, but instead, in a complete about-face from its prior coverage letters, denied coverage for any settlement with respect to the WA CPA claim and any other CPA claims, and reserved all rights with respect to the other claims.

14. Specifically, although the WA CPA claim had been pending for over a year, Chubb cited for the first time a purported exclusion in the Policy that Chubb wrongly claimed barred coverage of the WA CPA claim, one of the four remaining operative causes of action in the Privacy Action, and asserted that therefore Chubb would not provide full coverage for a settlement within Policy limits. Chubb also stated that, if it were to authorize a settlement offer, that Chubb would allocate its liability to its Insured between covered and uncovered claims even though the Policy contained no provision allowing Chubb to do so. In fact, the Policy expressly disallows allocation,

3

and states that damages resulting from a single claim are deemed a single damage. Further, Chubb did not even attempt to demonstrate that the WA CPA drove any settlement amount higher, and Chubb, to this day, has never stated its position as to what an appropriate allocation should be.

15. Hearst immediately communicated its disagreement with Chubb's denial and demonstrated that all the causes of action in the MCG Suits fell squarely under an express coverage grant in the Policy.

16. Notwithstanding Chubb's refusal to honor its coverage obligations, Chubb attended the July 26 mediation, and Hearst kept Chubb fully informed of the mediation settlement negotiations that continued for several months. Throughout the mediation process, however, Chubb held its insured hostage in order to leverage the settlement process to attempt to force Hearst into accepting a compromise on Chubb's coverage obligations.

17. Hearst made numerous demands on Chubb to confirm that it would indemnify its insured for the full amount of the settlement in accordance with the terms of the Policy, but instead, Chubb made conditional offers to indemnify only a fraction of proposed settlements, which would be provided only in exchange for Hearst's own contribution to the settlement and a waiver of Hearst's right to seek additional amounts owed under the Policy.

18. Despite Chubb's substantial interference, on December 8, 2023, Hearst was able to reach a settlement of the Privacy Action for $8.8 million (subject to final court approval) – a fraction of the Plaintiffs' original claim for damages, and well below the Policy limits. Chubb never objected to MCG agreeing to the settlement, or made any statements that Chubb believed the settlement amount was too high.

19. Hearst again made numerous demands on Chubb before accepting the $8.8 million settlement offer to confirm that it would indemnify its insured for the full amount of the settlement

4

in accordance with the terms of the Policy.

20. Chubb refused, abandoning its obligations to its insured under the Policy.

21. Hearst therefore seeks declaratory judgments declaring the scope of Chubb's obligation to pay Hearst's losses under the Policy.

22. Hearst also seeks damages for breach of contract against Chubb for its failure to honor the promises made to its insured in the Policy.

## THE PARTIES

23. The Hearst Corporation is a Delaware corporation with its principal place of business in New York, New York.

24. MCG is a wholly owned subsidiary of The Hearst Corporation.

25. Upon information and belief, ACE American Insurance Company is a Pennsylvania corporation, with its principal place of business in Philadelphia, Pennsylvania, and was at all relevant times, licensed and doing business in the State of New York.

26. ACE acquired Chubb in 2016 and adopted the Chubb brand name. Accordingly, ACE is now doing business as Chubb.

## JURISDICTION AND VENUE

27. This Court has general personal jurisdiction over Chubb pursuant to CPLR §301, because Chubb carries on a continuous and systematic part of its general business within the State of New York, including but not limited to marketing, selling, and issuing insurance policies to New York businesses and insuring events in New York.

28. This Court has specific personal jurisdiction over Chubb pursuant to CPLR §302, because Chubb contracted to insure a risk located within the State of New York at the time of contracting.

5

29. Venue is proper in this Court pursuant to CPLR §503 because a substantial part of the events and omissions giving rise to the claim occurred in New York County.

## FACTUAL BACKGROUND

**The Policy**

30. Like all companies with an online presence, Hearst and its various businesses, including MCG, face a range of cyber risks, including data breaches. Hearst and MCG are not alone – thousands of companies face data breaches each year, and an overwhelming percentage of healthcare organizations in particular are targets.

31. Given the growing frequency of cybersecurity events and data breaches impacting the healthcare and related industries, Hearst purchased a Policy from Chubb, to protect itself and its businesses from the potential risks they face. The ACE Advantage® Multimedia Liability Policy issued by Chubb provides coverage for the policy period November 1, 2021 to November 1, 2022.

32. The Named Insured under the Policy is The Hearst Corporation, and also includes any subsidiaries, including MCG.

33. Chubb and/or its affiliates drafted the Policy.

34. In exchange for substantial premiums, Chubb provided the following coverages to Hearst and its covered businesses under the Policy.

35. Under the Policy's Privacy Liability provision, the Policy covers damages and claims expenses during the Policy Period that the Insured becomes legally obligated to pay by reason of a claim made against the Insured for any Wrongful Acts.

36. Under the Policy's Network Security Liability provision, the Policy also covers damages and claims expenses during the Policy Period that the Insured becomes legally obligated

6

to pay by reason of a claim made against the Insured for any Wrongful Acts.

37. The Policy defines Claim to mean a written demand against any Insured for damages, a civil proceeding against any Insured, or an arbitration proceeding against any Insured.

38. The Policy defines Damages and Claims Expenses to include any amount which the Insured becomes legally obligated to pay on account of a covered Claim, including judgments and settlements, as well as defense costs, including attorneys' fees.

39. The Policy provides that a Wrongful Act is, *inter alia*, any actual or alleged negligent act, error, omission, or misstatement regarding the failure by the Insured to properly handle, manage, store, destroy or otherwise control personal information, or an unintentional violation of the Insured's privacy policy that results in the violation of any privacy regulation.

40. Under the Policy, privacy regulations include legislation associated with the custody, control, handling or use of personally identifiable financial, medical, or other sensitive information, such as, for example, the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").

41. Personal information under the Policy includes an individual's name, social security number, zip code, email address, medical or healthcare data, other protected health information, or other nonpublic personal information as defined in privacy regulations.

42. The Policy does not contain a provision permitting allocation of a settlement amount between purported covered and uncovered causes of action, although Chubb commonly includes such allocation provisions.[2]

43. In fact, the Policy explicitly negates any right to allocation, and states that damages

---

[2] *See* https://www.chubb.com/content/dam/chubb-sites/chubb-com/us-en/the_forefront_portfolio_policy_guide.pdf at p. 14.

resulting from a single claim are deemed a single damage.

44. The Policy's Additional Insuring Agreements Endorsement adds a Consumer Protection Exclusion stating that Chubb shall not be liable for damages or claims expenses on account of claims alleging or arising out of false, deceptive or unfair business practices, violation of consumer protection laws, or false or deceptive advertising.

**The Privacy Action and Chubb's Coverage Position**

45. Beginning in June 2022, thirteen class action complaints were filed against MCG: nine were in the U.S. District Court for the Western District of Washington, three in the U.S. District Court for the Central District of California; and one in the Circuit Court of Jackson County, Missouri.

46. MCG was dismissed from two of the actions, and ultimately the remaining eleven actions were joined into a consolidated class action in the U.S. District Court for the Western District of Washington, titled *In re MCG Health Data Security Issue Litigation*, No. 2:22-cv-00849 (defined above as the "Privacy Action"). The Privacy Action sought damages that far exceeded the Chubb Policy limits, for MCG's alleged failure "to design, adopt, implement, control, direct, oversee, manage, monitor and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems to safeguard and protect Plaintiffs' and Class Members' Private Information."

47. Chubb was promptly notified of the Privacy Action. On August 25, 2022, Chubb issued a coverage letter, stating that the Privacy Action triggered coverage under the Policy. Chubb stated that its determination of coverage for the Privacy Action was based on the information received to date and one of the facts that Chubb specifically noted was that the Privacy Action included causes of action for violation of the WA CPA. Chubb agreed to provide a defense

8

to MCG in the Privacy Action and made no mention of any purported coverage exclusions that would be triggered by any of the causes of action, including the WA CPA, or any purported right to allocate damages, a settlement, or defense costs between different causes of action.

48. In February 2023, MCG and Plaintiffs agreed to mediate the Privacy Action, and the mediation was scheduled for July 26, 2023. Chubb was provided with timely notice regarding the parties' intent to mediate, and agreed to the parties' choice of a mediator and the mediation date. Chubb was also provided with full information from MCG's defense counsel regarding their settlement evaluation to support MCG's request to Chubb for settlement authority within Policy limits.

49. In April 2023, Hearst asked Chubb for settlement authority within the Policy limits to prepare for the July 26 mediation.

50. Despite Hearst asking for a response for months, Chubb waited until less than five business days before the mediation to finally respond, and wrongly denied coverage and authorization for a settlement within Policy limits.

51. For the first time, Chubb cited to the Consumer Protection Exclusion which it claimed supposedly barred coverage for the cause of action alleging violation of the WA CPA, one of the three remaining causes of action in the Privacy Action, and Chubb refused to contribute to any settlement relative that cause of action. Hearst responded immediately that it disagreed with Chubb's denial.

52. Chubb's attempt to escape its coverage obligations on the eve of mediation evidenced a complete lack of good faith, and Chubb's failure to raise any purported "exclusions" until more than a year after Chubb was informed of the WA CPA allegations in the Privacy Action, and after it had accepted coverage, was a breach of its obligations under the Policy.

9

53. Although Chubb attempted to make the WA CPA claim appear "new," the truth is that the Privacy Action had alleged violations of the WA CPA from the start. Indeed, the WA CPA allegations had been expressly considered in Chubb's August 25, 2022 coverage determination, in which Chubb made no mention of any purported exclusion, or right to allocate a settlement between allegedly uncovered and covered claims.

54. The WA CPA cause of action alleged liability for MCG purportedly "knowingly failing to design, adopt, implement, control, direct, oversee, manage, monitor and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems to safeguard and protect Plaintiffs' and Class Members' Private Information." (Amended Complaint, ¶ 313). These allegations (like the allegations of all of the causes of action in the Privacy Action) fall squarely under the Policy's coverage for the failure by the Insured or by a third party for which the Insured is legally responsible to properly handle, manage, store, destroy or otherwise control Personal Information. Chubb's contention that the WA CPA cause of action is excluded from coverage is therefore wrong and to the extent it conflicts with an express coverage grant, the Consumer Protection Exclusion cannot apply.

55. Chubb's contention that it was entitled to allocate between purportedly covered and uncovered causes of action for the purposes of determining coverage for a lump sum settlement of a lawsuit for which it had admitted coverage is also wrong. The Policy does not contain a provision permitting allocation of a settlement amount and no basis exists in the Policy or otherwise for Chubb's attempt to allocate any settlement between purportedly covered and uncovered causes of action.

56. Indeed, Chubb commonly includes allocation provisions in its policies, but chose not to include such a provision in the Policy issued to Hearst. In fact, the Policy explicitly negates

10

the right to allocation. The Policy states that damages resulting from a single claim are deemed a single damage. Thus, the Policy requires that different "Damages" (defined as including settlement amounts) sought in a single covered "Claim" (defined as including civil proceedings against any Insured) are deemed a single unitary "Damage."

57. Chubb also made no attempt to demonstrate that any settlement was made larger by the presence of the WA CPA cause of action. Any settlement would encompass the three other causes of action for which Chubb did not dispute coverage.

58. Even though Chubb has admitted at least partial coverage for the settlement, to date Chubb has never disclosed the undisputed amount it believes is owed under the Policy or how it would calculate that amount, despite numerous requests by its insured to do so.

59. Throughout the MCG's negotiations with Plaintiffs, Chubb attempted to leverage the settlement process to the detriment of its insured by both refusing to disclose the undisputed amount that Chubb believed it owed under the Policy in connection with settlement offers, and also demanding that Hearst contribute to coverage of the settlement as a condition to Chubb increasing its contribution offer.

60. Because Chubb refused to honor its coverage obligations, Hearst was forced to pursue a settlement with Plaintiffs without any commitment from Chubb to provide coverage for the settlement amount. On December 8, 2023, MCG obtained a settlement in principle of the Privacy Action (subject to final court approval)[3] when MCG and Plaintiffs both accepted the mediator's proposal of a $8.8 million settlement.

61. On December 22, 2023, Hearst again demanded that Chubb confirm that it would

---

[3] The court preliminarily approved the settlement on May 1, 2024.

indemnify its insured for the full amount of the $8.8 million settlement in accordance with the terms of the Policy.

62. Chubb refused, abandoning its obligations to its insured under the Policy.

63. Pursuant to the terms of the Policy, Chubb is obligated to indemnify Hearst for the full settlement amount.

64. Hearst paid substantial premiums for the Policy and performed all obligations under the Policy to the extent required by law.

65. None of the coverage defenses that Chubb has raised apply under the Policy, and further, Chubb has waived any such defenses by not timely raising them in relevant coverage letters. Alternatively, such defenses are the subject of an estoppel.

66. Chubb's denial of Hearst's claim constitutes a breach of the duty of good faith and fair dealing an insurer owes to its policyholder. In so doing, Chubb placed its own interests above those of its policyholder.

## FIRST CAUSE OF ACTION
**(Declaratory Judgment as to Coverage)**

67. Hearst incorporates the above Paragraphs by reference.

68. This is a claim for relief for declaratory judgment pursuant to CPLR §3001. An actual and justiciable controversy exists between Hearst and Chubb concerning their respective rights and obligations under the Policy.

69. The issuance of declaratory relief will terminate the controversy between Hearst and Chubb that gave rise to this action.

70. As such, this Court has the authority to issue a declaratory judgment concerning the respective rights and obligations of Hearst and Chubb under the Policy.

71. Hearst seeks a declaratory judgment declaring that under the Policy, Chubb must indemnify Hearst fully for all amounts incurred in connection with the Privacy Action, including but not limited to the entirety of the $8.8 million settlement amount in the Privacy Action.

## SECOND CAUSE OF ACTION
### (Breach of Contract)

72. Hearst incorporates the above Paragraphs by reference.

73. The Policy is a valid and enforceable contract.

74. Hearst paid substantial premiums for the Policy and the promises of coverage contained therein, and otherwise performed all of its obligations owed under the Policy or was excused from performance.

75. Chubb has wrongfully denied Hearst's claim and has refused to pay or otherwise honor its promises. In denying coverage for Hearst's claim, Chubb breached the Policy. As a result, Hearst has suffered damages, in an amount to be proven at trial.

76. Chubb also has breached the covenant of good faith and fair dealing under the Policy, including by: (1) leveraging the settlement process to the detriment of its insured by agreeing to increase its settlement contribution amount only in exchange for Hearst's waiver and release of claims for coverage under the Policy to which Hearst is entitled, and (2) despite numerous demands, failing to ever inform Hearst of the undisputed amount Chubb believed was owed under the Policy in connection with the settlement or how such amount was calculated by Chubb, thereby, forcing its insured to consider settlement offers with incomplete information as to their financial impact. As a result, Hearst is entitled to consequential damages for Chubb's breach of the Policy.

77. Consequential damages, including attorneys' fees, for breach of the Policy arising

out of Chubb's failure to settle an underlying lawsuit within Policy limits were reasonably contemplated by the parties when Chubb issued the Policy.

### PRAYER FOR RELIEF

WHEREFORE, Hearst respectfully demands judgment against Chubb as follows:

1) On the First Cause of Action, a declaratory judgment that under the Policy, Chubb must indemnify Hearst fully for all amounts incurred in connection with the Privacy Action, including but not limited to the entirety of the $8.8 million settlement amount in the Privacy Action.

2) On the Second Cause of Action, for an award of damages in favor of Hearst in an amount to be proven at trial, plus pre- and post-judgment interest at the maximum legal rate, attorneys' fees, costs and disbursements for this action; and

3) For such other equitable and further relief as this Court deems just and proper.

Dated: New York, New York
May 6, 2024

                                           */s/ Alexander D. Hardiman*
                                           Alexander D. Hardiman
                                           Patricia Rothenberg-Montz
                                           Georgia Bender
                                           PILLSBURY WINTHROP SHAW PITTMAN LLP
                                           31 West 52nd Street
                                           New York, New York 10019-6131
                                           Telephone: (212) 858-1000
                                           Fax: (212) 858-1500
                                           alexander.hardiman@pillsburylaw.com
                                           patricia.rothenberg@pillsburylaw.com
                                           georgia.bender@pillsburylaw.com

                                           Attorneys for The Hearst Corporation